UNITED STATES of America, Appellee,

v.

Tommie Lewis PENSON, Appellant.

UNITED STATES of America, Appellee

v.

Genaro ALVAREZ, Appellant.

UNITED STATES of America, Appellee,

v.

Tommie Lewis PENSON, Appellant.

Nos. 94–3595, 94–3621 and 94–3625.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1995.

Decided Aug. 7, 1995.

Edgar E. Lim, St. Louis, MO, argued, for Penson.

Linda Kay Behrmann, St. Louis, MO, argued, for Alvarez.

James Edward Crowe, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

BOWMAN, Circuit Judge.

Genaro Alvarez and Tommie Lewis Penson appeal from their convictions under 18 U.S.C. § 371 (1988) for conspiracy to steal, forge, and convert United States Treasury checks, under 18 U.S.C. §§ 471 and 472 (1988) for uttering a counterfeit United States Treasury check, and under 18 U.S.C. §§ 641 and 642 (1988) for theft and conversion of a United States Treasury check. Alvarez, who also

appeals his sentence, alleges that the District Court[1] erred a) in denying his motion for severance, allowing him to be tried with Penson, who also was tried and found guilty on a separate charge of conspiracy to kill a government witness to prevent the witness from testifying at trial, b) in questioning a juror about murder charges against the juror's son after jury deliberations had already begun, and c) in misapplying the sentencing guidelines by failing to apply U.S.S.G. § 2X1.1 (1993), which permits a three-level reduction for partially completed offenses. Penson joins with Alvarez in appealing point b). We affirm in all respects.

## I.

From October to November 1993, using contacts with an employee in the Disbursing Office of the St. Louis Postal Data Center, Penson obtained several stolen blank Treasury checks. Louis Williams recruited Alvarez to negotiate the checks in Mexico and on October 29, 1993 Alvarez presented a check, made payable to him, in the amount of $1,165,000, receiving the proceeds thereof in Mexico City. This success prompted a further theft of about sixty blank Treasury checks, one of which, in the amount of $10,000,000, was unsuccessfully tendered for payment by Alvarez and Emilio Sanchez Martinez, a compatriot, in Matamoras, Mexico in mid-November. Postal inspectors launched an investigation, resulting in the arrest and indictment of Penson and Alvarez, along with others. Before trial, the government learned that Penson was involved in a plot to kill Jobe Reid, a government witness. Penson and his son agreed that the son would go to Reid's residence, force him at gunpoint to sign proposed suicide notes, and then dispatch him with an overdose of heroin. Penson was charged in connection with this matter in a separate indictment, which was joined for trial with that involving the Treasury-check charges. Penson and Alvarez were convicted on all of the latter charges, and Penson also was convicted of conspiring

to kill Jobe Reid. After sentencing, Penson and Alvarez filed these timely appeals.

## II.

Alvarez claims the District Court erred in denying his motion for severance, arguing that it was extremely prejudicial for him to be tried with Penson, who had been charged, in a separate indictment, with conspiring to kill a government witness to prevent him from testifying at trial. Alvarez's initial motion for severance was denied on the same day that Rodney Penson, Tommie Penson's son, was arrested for his part in the plot to kill Jobe Reid. Alvarez's motion for severance was renewed when the government stated that it would seek to join the indictment charging Tommie Penson with the murder conspiracy to the prior indictment charging Alvarez and Penson with the Treasury-check offenses. The District Court denied the renewed motion. The court, however, did offer limiting instructions to guard against improper prejudice to Alvarez.

In his brief, Alvarez correctly quotes the governing law:

> [A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a defendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.

*Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). Alvarez argues that here "the risk of prejudice was very great," and that he "was in no way connected with the conspiracy to kill Reid and at no time did the government allege that he was." Brief for Alvarez at 15.

---

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

Consistent with *Zafiro*, we must consider whether Alvarez has "affirmatively demonstrate[d] that the joint trial prejudiced his right to a fair trial." *United States v. O'Connell*, 841 F.2d 1408, 1432 (8th Cir.1988), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), and 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). We review the District Court's denial of Alvarez's motion for severance for abuse of discretion resulting in " 'severe or compelling prejudice.' " *United States v. McGuire*, 45 F.3d 1177, 1187 (8th Cir.1995), (quoting *United States v. Rimell*, 21 F.3d 281, 289 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994)), *cert. denied*, —— U.S. ——, 115 S.Ct. 2558, 132 L.Ed.2d 811 (1995).

We conclude that the instant case falls within the ambit of *United States v. Wint*, 974 F.2d 961, 966 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993), in which we upheld the denial of a motion for severance filed by a defendant whose circumstances were considerably more compelling than those of Alvarez in the present case. *Wint* concerns a situation in which three individuals were charged with a conspiracy to distribute cocaine and two of the trio with threatening to kill the third. *See id.* at 965. Seeking a severance, the third defendant, in addition to his other contentions, argued that the defenses of his co-defendants were irreconcilable with his, that " 'the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.' " *Id.* at 966, quoting *United States v. Jones*, 880 F.2d 55, 63 (8th Cir.1969). In the present case, Alvarez's and Penson's defenses to the Treasury-check charges were not irreconcilable, and Alvarez does not contend that they were. The evidence against Penson regarding the conspiracy to kill Reid in no way affected Alvarez's defense that he thought the checks given him to be cashed were legitimate. Further, as Alvarez notes, he is in no way connected with the murder conspiracy nor did the government allege that he was. "Severance is proper where a defendant demonstrates that a jury could not reasonably be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. Massa*, 740 F.2d 629, 644 (8th Cir.1984), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). Here, the evidence is clearly compartmentalized as it relates to the two defendants, and the District Court gave the jury an appropriate limiting instruction.

Alvarez has failed to meet his burden of showing that "the joint trial prejudiced his right to a fair trial." *O'Connell*, 841 F.2d at 1432. We therefore hold that the District Court did not abuse its discretion in denying Alvarez's motion for severance.

### III.

Both Penson and Alvarez argue that the District Court erred in questioning a juror about murder charges against the juror's son after jury deliberation already had begun. During voir dire the District Court questioned members of the jury panel as to whether close family members ever had been convicted of a crime. Joseph Kitchen, the juror in question, did not reply in the affirmative. After the conclusion of arguments, and during jury deliberations, it was brought to the court's attention that the prosecutor had been informed by another government attorney that Kitchen recently had been on a prior jury panel in another case and had revealed that he had a son who had been charged with second-degree murder. Kitchen had not been selected as a juror in that action, hence his availability in the instant case. Out of the jury's hearing and with all parties present, the court, over defendants' objection, summoned Kitchen from the jury room and questioned him about this matter. The juror responded that he had answered the District Court's question during voir dire properly, because his son had only been charged with an offense, not convicted. Stating that he believed he could be fair to all parties in the case, and having satisfied the court, Kitchen was allowed to return to the jury room.

Alvarez suggests that the court's decision to probe the juror after jury deliberations had already begun "was an abuse of discretion since the questioning may well have impeded Kitchen's freedom to render an impartial verdict and may have aroused suspi-

cion among the other jurors, thus depriving Alvarez and Penson of an impartial jury." Brief for Alvarez at 20. We review this issue for abuse of discretion. *See United States v. Campbell,* 845 F.2d 782, 785 (8th Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988). In support of his position, Alvarez relies upon *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), a case involving the vacating of a criminal conviction due to an *ex parte* examination by the judge and prosecutors of a report concerning the F.B.I.'s mid-trial examination of a juror. The court in *Remmer* noted that

> [t]he integrity of jury proceedings must not be jeopardized by unauthorized invasions. The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id.,* at pp. 229–30, 74 S.Ct. at pp. 451–52. Unlike *Remmer,* in the present case the District Court did not act *ex parte;* the questioning of Kitchen took place on the record and with all parties present. Moreover, at the conclusion of questioning, counsel for Alvarez did not object to Kitchen remaining on the jury. *See* Brief of Appellee at 13.

To argue, as does Penson, that *Remmer* "recommended ... a post-verdict inquiry" pushes the facts beyond their limit. *See* Brief for Penson at 8. We have examined all of the cases that Penson and Alvarez have called to our attention, and none of them stands for the proposition that the trial court must wait until the trial is over and the verdict in to inquire into allegations of jury misconduct. In the circumstances of this case, the trial court had good reason to inquire into Kitchen's less-than-fully-responsive answer to the voir dire question as to whether close family members ever had been convicted of a crime.

Contending that his case was prejudiced by the court's interrogation of Kitchen, Penson argues that

> [w]hen a judge removes one of the few black jurors, an elderly black man, from deliberations and begins to question him in an accusatory tone, about an alleged crime that his son committed and about answers that were given by him on voir dire, said juror is bound to feel intimidated by these actions of the judge, which are bound to have a chilling effect on that juror's ability to deliberate fairly and impartially. Suddenly this juror himself is "on trial."

> Here, the juror returns to the deliberation process having been in effect admonished, antagonized, and interrogated by the trial judge, who in effect conveys a subliminal message to the juror that the defendant is guilty and that said juror "should" find him guilty as well if he, the juror, is in fact fair and impartial.

Brief for Penson at 16. Even accepting the "facts" as here stated, which are presented in the best light for the defendants, we cannot accept the conclusion Penson would have us draw. Penson's argument is long on speculation, but there is no showing that Kitchen's interview with the court influenced him in any way adverse to the defense, nor is there any evidence whatsoever that his race had anything to do with the manner in which the trial court chose to handle this matter. Having considered all of the arguments advanced by both Alvarez and Penson, we conclude that the District Court did not abuse its discretion in this regard.

### IV.

■ Alvarez further argues that the court erred in misapplying the sentencing guidelines by failing to consider U.S.S.G. § 2X1.1, which permits a three-level reduction for partially completed offenses. We find this argument to be precluded by our decision in *United States v. Johnson,* 962 F.2d 1308, 1313–14 (8th Cir.1992) (holding reduction not appropriate where circumstances demonstrated that conspirators would have completed all necessary acts but for their apprehension or interruption by events beyond their control), *cert. denied,* —— U.S. ——, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993). Here, the undisputed evidence clearly establishes that the defendants intended to cash stolen

Treasury checks that would have caused the United States to suffer a loss of over $60,-000,000 and that they would have continued to pursue their scheme but for the intervention of the postal inspectors. Thus, the District Court did not err in denying Alvarez a three-level reduction in his base offense level.

### V.

The judgment of the District Court is affirmed.