**UNITED STATES of America, Plaintiff,**

v.

**Kim Tae SUNG, Defendant.**

**No. 92 CR 687.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 1, 1996.

William H. Theis, Chicago, IL, for defendant.

John Joseph Tharp, Jr., United States Attorney's Office, Chicago, IL, for the U.S.

*MEMORANDUM OPINION*

BRIAN BARNETT DUFF, District Judge.

This case comes before this court for Kim Tae Sung's ("Kim") resentencing based on the Seventh Circuit's remand in *U.S. v. Sung*, 87 F.3d 194 (7th Cir.1996). The Seventh Circuit directed this court to consider two issues, whether: 1) the evidence establishes "with reasonable certainty" that Kim intended to sell 240,000 bottles of counterfeit products, and 2) Kim "was about to complete all [necessary] acts but for apprehension."[1] After reviewing the record, this Court again finds that the evidence establishes with "reasonable certainty" that Mr. Kim intended to sell 240,000 bottles of counterfeit Soft Sheen products. Regarding the second issue, while this court respectfully disagrees with the Seventh Circuit's interpretation of "about to complete ... but for apprehension," this court will comply with the Seventh Circuit's directive and finds that Mr. Kim had not yet completed all necessary acts but for apprehension. Based on these findings, this court sentences Mr. Kim to 41 months imprisonment.

## I. BACKGROUND

Given this case's long procedural history, this court will only provide a brief summary of the underlying facts in this case. Kim was convicted of selling imitation Soft Sheen hair care products with counterfeit trademarks in violation of 18 U.S.C. § 2320(a). Specifically, Kim counterfeited bottles of Soft Sheen Wave Nouveau Finishing Mist, which had a retail value of four dollars a bottle. At that time of his apprehension, Kim had filled 17,600 bottles; however, he had in his possession 68,000 bottles, 20,600 spray bottle caps, and 20,000 shipping cartons. Each of these cartons could hold twelve bottles. Based on these figures, this court sentenced Mr. Kim to 48 months imprisonment.

The Seventh Circuit affirmed Mr. Kim's conviction but remanded the case for resentencing. *U.S. v. Sung*, 51 F.3d 92 (7th Cir. 1995). After this court sentenced Kim to the same sentence, he again appealed his sentence. The Seventh Circuit reviewed the sentence and again remanded for resentencing, directing this court to make explicitly two findings.

## II. ANALYSIS

### A. "Reasonable certainty"

■ United States Sentencing Guidelines ("U.S.S.G.") § 2X1.1(a) allows this court to adjust the base offense level for "any intended offense conduct that can be established with reasonable certainty." The Seventh Circuit remanded after concluding that this court failed to make a "reasonable certainty" finding. This court believes that it made such a finding during its resentencing but reiterates its reasoning with greater specificity.

This court again finds that Mr. Kim intended to sell 240,000 bottles of counterfeit

1. After the second remand, the defendant filed a petition for writ of mandamus with the Seventh Circuit requesting that this court be ordered to set a date for sentencing. The government filed a response which agreed that the writ should be issued. After this court explicitly scheduled sentencing for August 1, 1996, the Seventh Circuit denied the defendant's petition as moot. This court finds this entire series of events dismaying since this court never expressed that it would not properly sentence Mr. Kim. On the contrary, this court indicated that it sought to understand the issues raised on appeal and the subsequent Seventh Circuit's instructions in order to sentence Kim according to the Sentencing Guidelines. To this end, an August 1, 1996 status date was set during which this court intended to sentence Mr. Kim. The fact that the parties took the extraordinary step of seeking a mandamus rather than simply asking this court to make clear its intention to sentence Kim on August 1, 1996 was both unnecessary and inappropriate.

Soft Sheen products. As the evidence presented during trial and sentencing demonstrates, this intent has been established with reasonable certainty. Kim purchased 20,000 boxes, at a cost of over $4,200. As this court previously determined, it is illogical to believe that Kim would purchase such a large lot without any intent to use them. During the first appeal, the Seventh Circuit expressed its concern that Mr. Kim had simply purchased 20,000 boxes because this was the standard lot. On remand, the government presented this court with the affidavit of Andrew Choi, Vice President of Hoover Containers, the company which manufactured the boxes Kim purchased. Mr. Choi's affidavit stated that the company's minimum order was 1,000 boxes and that additional boxes could be ordered in any increment. Even if Kim realized a discount by purchasing such a large amount of boxes, the savings would not be worth the additional expenditure if Kim did not intend to use the 20,000 boxes.

Kim's purchase of 20,000 boxes, therefore, indicates that it was his intent to sell 240,000 bottles of counterfeit Soft Sheen products. He was working towards this goal by purchasing enough fluid to fill 17,600 bottles, 68,000 bottles and over 20,000 spray bottle caps. While the number of components on hand did not equal the 240,000 units available in the boxes, it is easier to store and maintain a large amount of boxes than bottles or caps, which necessitate more space. The evidence demonstrated that Kim had begun to establish a network of retailers who were willing to purchase his counterfeit product. There is no reason to believe that Kim could not have quickly obtained the additional bottles or bottle caps if one of these retailers had placed a large order.

Furthermore, there was no evidence that Kim had limited the scope of his plan or had stopped trying to sell the counterfeit product. Similarly, there was no indication that Kim intended to stop production or sale of the counterfeit products before he filled 240,000 bottles. Indeed, Kim continued to sell his product even after being observed by Soft Sheen's investigators. Neither was there any evidence that Kim intended to use these 20,000 boxes for another purpose. This court concludes that if Kim had not been apprehended, he clearly intended to complete his plan to manufacture 240,000 bottles; the fact that Kim did not have that number bottles or bottle caps on hand is not determinative of his intent. Accordingly, this court finds that Kim's intent to produce and sell 240,000 units has been established with reasonable certainty.[2]

### B. "But for apprehension"

Since Kim did not actually sell 240,000 bottles, pursuant to U.S.S.G. § 2X1.1(b), this court should reduce by three the loss enhancement figure:

> unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

The Seventh Circuit has made it clear that this court should grant Kim this three level reduction. While simply concluding that this court had "made no finding it all," the appellate court sought to guide this court's reduction analysis. Questioning whether Kim "was about to complete all [necessary] acts but for apprehension," the Seventh Circuit noted that:

> Kim lacked the materials to fill more than 17,600 bottles. The record suggests that during the four months proceeding his apprehension, Kim had neither sold any counterfeit hair care products nor ordered the materials necessary to manufacture more. Kim had not only the law but also the market to contend with. His initial customers were displeased with the product's quality; their complaints set off both private and public investigation. Any finding that Kim was just about to fill and sell

---

**2.** Since the value of the intended loss is greater than the actual loss, the intended loss figure (240,000 bottles × $4 + $960,000) is used to determine the loss enhancement figure pursuant to U.S.S.G. § 2F1.1.

another 222,400 bottles when he was nabbed would be clearly erroneous.

87 F.3d at 196.

█ It is particularly troubling that with this statement the Seventh Circuit apparently has ventured into the fact-finding domain of the district court. The federal court system prescribes certain roles to both district and appellate courts. Both sentencing and fact-finding remain the unique roles of district courts. The Seventh Circuit acknowledged this fact when rather than impose Kim's sentence, it remanded the case to this court for resentencing. Yet by including language threatening a mandamus, the appellate court has virtually mandated that this court impose a certain sentence; in doing so, the appellate court has stepped into the district court's role.

The mandamus language was unnecessary and, to the best of this court's knowledge, unprecedented since this court never indicated an unwillingness to sentence Kim according to the Sentencing Guidelines. Instead, it applied the Sentencing Guidelines and after considering the evidence presented to it, this court made a determination that a three-level reduction was not warranted. It is clear to this court that the Seventh Circuit disagrees with this assessment; however, this disagreement did not necessitate such strong language. While not explicitly requiring this court to grant the three-level reduction, the appellate court's implicit fact finding, combined with the unnecessary mandamus language, has effectively constrained the options of this court. It is disheartening that the appellate court has found it necessary to force a certain result in this case; however, in light of that court's remand, Kim will receive his three-level reduction.

However, before granting Kim a three-level reduction, this court feels compelled to express its disagreement with the Seventh Circuit's interpretation of "complete all [necessary] acts ... but for apprehension." The Seventh Circuit's opinion places an improper emphasis on economics and what the market will bear in determining whether a three-level reduction should be granted. In concluding that Kim was not about to sell 222,-400 bottles when he was apprehended, the court noted that his customers "were displeased with the product's quality" and determined that "Kim had not only the law but also the market to contend with." In essence, the Seventh Circuit has infused economics and market forces into "but for apprehension" standard thereby creating the impression that Kim's three-level reduction depends on the quality of his counterfeit product and the probability of his success in marketing it.

This court respectfully disagrees that the "but for apprehension" analysis should depend on whether the market could bear 222,-400 bottles of counterfeit Soft Sheen products; instead, the test must be how close Kim came to producing this number of bottles. After the first remand, this court believed that Kim had come close enough by obtaining each necessary component and establishing a network of purchasers. Several cases from other circuits appear to support such a conclusion. *See, e.g., United States v. Penson,* 62 F.3d 242, 245 (8th Cir.1995) (holding reduction not appropriate where defendant had only cashed two of sixty stolen Treasury checks because "the undisputed evidence clearly establishes that the defendants intended to cash [these] stolen Treasury checks that would have caused the United States to suffer a loss of over $60,000,-000 ...."); *United States v. Barton,* 32 F.3d 61, 64 (4th Cir.1994) (affirming a denial of a reduction for a defendant who had simply accepted the money to be laundered because "[the defendant's] acceptance was the first step or initiation of his planned delivery of what he believed was drug money."). As in these other cases, Kim had begun to accumulate the necessary components and had taken critical steps towards the production and sale of 240,000 bottles. The only event which prohibited him from realizing this goal was his apprehension.

While this court differs with the Seventh Circuit's interpretation of the "complete all [necessary] acts ... but for apprehension" language, the Seventh Circuit has clearly conveyed that regardless of any fact-finding by this court, a three-level reduction should be granted. The Seventh Circuit sought to guarantee this outcome by warning this court

that any other finding would be "clearly erroneous" and then emphasizing this point by including its mandamus language. Apparently, the Seventh Circuit believes that a three-level reduction would only be unwarranted if Mr. Kim had filled 240,000 bottles with the fluid and was in the process of delivering the boxes. Based on this court's understanding of the Seventh Circuit's standard, Mr. Kim's purchase of significantly less than 240,000 bottles, bottle caps, and fluid combined with his limited sales requires that a three-level reduction be given.

## III.  SENTENCE

Based on this court's finding that Kim's intent to sell 240,000 bottles of counterfeit Soft Sheen products has been established "with reasonable certainty" but that he was not about to complete all the necessary acts absent his apprehension, Kim's final offense level, after all adjustments, is 20. Pursuant to the Sentencing Guidelines and for the reasons stated in open court on August 1, 1996, this court determines that the appropriate sentence for Mr. Kim is 41 months imprisonment.