Edward SANTIAGO III, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. C7–00–307.

Court of Appeals of Minnesota.

Oct. 17, 2000.

Frederick J. Goetz, Special Assistant State Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, St. Paul, and Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, for respondent.

Considered and decided by AMUNDSON, Presiding Judge, WILLIS, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge.*

A jury convicted appellant and a codefendant each of one count of second-degree murder and two counts of attempted second-degree murder. In this postconviction proceeding, appellant seeks a new trial claiming that the trial court abused its discretion in (1) joining the codefendants for trial; (2) not admitting certain evidence; and (3) allowing attorney misconduct to occur during attorney arguments. In the alternative to seeking a new trial, appellant challenges the trial court's imposition of a consecutive sentence. We affirm.

## FACTS

Appellant Edward Santiago III and codefendant Thomas Rodriguez III are cousins. On July 17, 1997, Rodriguez was in the pool area of the apartments in Richfield where his sister, Shalonda Rodriguez, lived. Thomas Rodriguez had an argument with Veronica Watt, who became angry and left with her two friends. Watt soon returned with these same two friends, followed by Manyani Henderson and Andre Patten. Watt then pulled a knife out of her boot and threatened to cut Rodriguez. Rodriguez appeared frightened, jumped over the pool fence, and ran off.

Rodriguez went to his sister's apartment and informed appellant that some people at the pool were "trying to start some sh-t." Appellant and Rodriguez returned to the pool area, at least one of them in a green Chevrolet Caprice. Shalonda Rodriguez, Shedava Abram, and a third friend, all of whom had been in Shalonda Rodriguez's apartment, also drove down to the pool in a separate car.

Watt approached Rodriguez and started yelling at him. Manyani Henderson tried to engage Rodriguez in a fight. Rodriguez appeared frightened and acted as if he did not want to fight. Andre Patten convinced Watt to end the altercation and to move away, but she began to yell at Rodriguez again. When Rodriguez moved towards her, Manyani Henderson stepped between them. One witness, Eugene Webster, who

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

observed the argument from his car, testified that appellant moved his hand towards the inside of his coat, as if to imply that he had a gun. Manyani Henderson began to walk away and Andre Patten again suggested that they stop the argument.

Eugene Webster testified that Rodriguez went to the passenger side of the green Chevrolet, leaned inside, and then walked over to appellant, who moved his hand toward Rodriguez and instructed him several times to "take care of your business." Another witness, Rhonda Watt, testified that Rodriguez asked appellant for a gun and that appellant handed something to Rodriguez and told him to handle his business. Rodriguez, appearing frightened, walked around the car with an exposed gun. Andre Patten told Veronica Watt to leave. Eugene Webster testified that appellant again instructed Rodriguez to "take care of your business." Appellant disputes that he directed Rodriguez's actions. Rodriguez then raised the gun and shot Andre Patten. Rodriguez also shot at Manyani Henderson and Veronica Watt as they fled. One of the shots struck Manyani Henderson in his right side, near his hip. Two other shots struck Rodriguez's cousin, Shedava Abram, in each foot. Andre Patten died from the gunshot wounds.

Appellant and Rodriguez fled from the scene. Rodriguez fled to the home of his uncle, Jose Rodriguez, and told him that he had shot Shedava Abram and someone else. Rodriguez telephoned appellant from Jose Rodriguez's home at least once. Rodriguez's sister, Shalonda, arrived at Jose Rodriguez's home with a towel-wrapped bundle, which she took inside. Jose Rodriguez later gave the towel-wrapped bundle, which contained the gun used in the shooting, to the police. Appellant also arrived at Jose Rodriguez's home. Appellant and Rodriguez then left the home in Rodriguez's green Chevrolet Ca-

price. The police stopped their car shortly thereafter and arrested them.

A jury convicted appellant and Rodriguez each of one count of second-degree murder and of two counts of attempted second-degree murder. Appellant, with his criminal history points, was sentenced to prison for 480 months for the second-degree murder charge, to a consecutive term of 153 months for the first count of attempted murder, and to a concurrent term of 214.5 months for the second count of attempted murder. Appellant now challenges the joinder of the codefendants for trial, the trial court's evidentiary rulings, alleged attorney misconduct, and his consecutive sentence.

### ISSUES

I. Did the trial court abuse its discretion in joining the trials of the codefendants?

II. Did the trial court abuse its discretion in disallowing certain evidence?

III. Did the prosecutor and counsel for the codefendant engage in misconduct during their arguments at trial, thereby depriving appellant of a fair trial?

IV. Was there a cumulative effect of evidentiary errors and improper argument of counsel requiring a new trial?

V. Did the trial court unfairly impose a consecutive sentence?

### ANALYSIS

### I.

Appellant contends that the trial court abused its discretion when it joined his trial with that of Rodriguez. Appellant also claims that, because his and Rodriguez's defenses were irreconcilable and mutually exclusive, separate trials were mandatory.[1] A trial court has the discre-

---

1. On July 13, 1999, this court filed an unpublished opinion in an appeal brought by Rodriguez. *State v. Rodriguez*, No. C9–98–1408, 1999 WL 486534 (Minn.App.1999), *review denied* (Minn. Sept. 14, 1999). In that appeal, this court affirmed the joinder of the codefendants for trial, stating there was no manifest necessity to sever because there was no

tion to determine whether codefendants jointly charged with a felony be tried separately or jointly. Minn. R.Crim. P. 17.03, subd. 2. In reviewing the trial court's decision to join codefendants for trial, we must independently determine whether the defendants suffered any substantial prejudice as a result of being joined for trial. *State v. Hathaway,* 379 N.W.2d 498, 502 (Minn. 1985).

■ Minn. R.Crim. P. 17.03 governs joinder and severance of criminal matters. Under this rule, two or more defendants jointly charged with a felony *"may* be tried jointly or separately, in the discretion of the court." Minn. R.Crim. P. 17.03, subd. 2 (emphasis added). The trial court shall sever defendants during trial "upon a finding of manifest necessity" if the court finds severance is required to fairly determine a defendant's guilt or innocence. Minn. R.Crim. P. 17.03, subd. 3(1)(c). Severance is proper if a defendant can show "that a jury could not reasonably be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. Penson,* 62 F.3d 242, 244 (8th Cir.1995) (quotation omitted).

Prior to 1987, rule 17.03 stated that two or more defendants jointly charged with a felony *"shall* be tried separately" unless the court, upon written motion, ordered a joint trial in the interests of justice. Minn. R.Crim. P. 17.03, subd. 2(1) (emphasis added). The former rule thus preferred that two or more persons charged in a felony receive separate trials. *See State v. Stock,* 362 N.W.2d 351, 352 (Minn.App.1985). The plain language of the current rule, however, eliminates this preference. Appellant, nevertheless, interprets the current rule to favor separate trials for codefendants who have mutually antagonistic defenses or who seek to shift blame to each other.

At the time of trial in February and March 1998, Minnesota courts had not yet reviewed and interpreted the current version of rule 17.03 and its impact on mutually antagonistic defenses. The United States Supreme Court, however, had reviewed the impact of mutually antagonistic defenses under the federal rule, which favors joinder of trials for codefendants who are indicted together. *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993).

■ In *Zafiro,* the Supreme Court refused to adopt "a bright-line rule, mandating severance whenever codefendants have conflicting defenses." *Id.* at 538, 113 S.Ct. at 937–38. Rather, the Court reasoned that "[m]utually antagonistic defenses are not prejudicial *per se,"* and that the federal rules leave the decision on joinder or severance to a trial court's discretion. *Id.* at 538–39, 113 S.Ct. at 938. The Court concluded that a trial court should grant a severance only if a serious risk of prejudice exists from a joint trial, which might "compromise a specific trial right of one of the defendant's, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. at 938.

■ Thus, to show that joinder is prejudicial, a defendant must prove that he was denied a fair trial by showing irreconcilable defenses or that the jury could not separate the evidence relating to each defendant. *United States v. Shivers,* 66 F.3d 938, 940 (8th Cir.1995). Even if a defendant might suffer prejudice from a joint trial, measures less drastic than severance, such as limiting jury instructions, often will be adequate to cure any risk of prejudice. *Zafiro,* 506 U.S. at 539, 113 S.Ct. at 938.

After appellant's 1998 trial in this case, the Minnesota Supreme Court addressed joinder and the current Minn. R.Crim. P. 17.03. *See State v. DeVerney,* 592 N.W.2d 837 (Minn.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999); *State v. Greenleaf,* 591 N.W.2d 488 (Minn.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 156, 145 L.Ed.2d 132 (1999).

prejudice to Rodriguez. Rodriguez's claims

of prejudice differ from appellant's.

*DeVerney* and *Greenleaf* are not controlling here because they did not involve mutually antagonistic defenses. This case, therefore, is one of first impression.

■ Rodriguez claims that he shot the gun because appellant instructed him to do so. Appellant claims that he did not instruct Rodriguez or hand him the gun and was merely a bystander at the shooting. He claims that Rodriguez did the shooting on his own. It is evident that appellant and Rodriguez are attempting to shift blame to one another.

We conclude that the trial court properly used its discretion to order a joint trial. Before trial, the court considered the rule 17.03 factors, which include the nature of the offense charged, the victim impact, the potential prejudice to the defendant, and the interests of justice. *See* Minn. R.Crim. P. 17.03, subd. 2(1). The court determined that, because both defendants were involved in the events leading up to the shooting and the evidence would be the same, the jury would better understand each defendant's role by hearing all the evidence in one trial. The court further determined that neither defendant could show he would be prejudiced by a joint trial or could specifically identify inconsistent defenses.

At the end of trial, the court properly instructed the jury to lessen any risk of prejudice. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. at 938 (limiting instructions often suffice to cure risk of prejudice in joint trial). The jury was instructed: (1) to give separate and personal consideration to the case of each individual defendant; (2) to evaluate the evidence with respect to each individual defendant leaving out of consideration any evidence admitted solely against the other defendant; (3) that each defendant was entitled to have his case determined from evidence as to his own actions; and (4) that finding one defendant guilty should not in any way affect the jury's verdict regarding the other defendant.

The postconviction court also weighed the interests of the victims and their families in having to suffer through two trials, finding that some of the witnesses were frightened and reluctant to testify even at one trial. In balancing any potential prejudice to the defendants and the state's interests, the trial court properly concluded that there was no manifest necessity to sever and that no substantial prejudice existed to either defendant as a result of the joinder.

Under these circumstances, the joint trial gave the jury the best perspective on all of the evidence leading to the conviction. We believe a jury could also reasonably separate the evidence relating to appellant and to Rodriguez. The trial court, therefore, did not abuse its discretion in joining appellant and Rodriguez for trial.

## II.

■ Appellant argues that he was denied a fair trial when the trial court excluded evidence supporting appellant's defense that Rodriguez acted alone. This court largely defers to the trial court's evidentiary rulings, which will not be overturned absent a clear abuse of discretion. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn. 1989). When dealing with a claim of erroneous exclusion of evidence, prejudicial error occurs when there is a reasonable possibility that the verdict might have been more favorable to the defendant if the evidence had been admitted. *State v. Post*, 512 N.W.2d 99, 102 (Minn.1994).

■ Appellant first argues that evidence that Rodriguez was known to carry handguns in his waistband should have been admitted to show that Rodriguez carried his guns in a certain manner and to create a reasonable doubt that appellant ever had the gun. We agree with the trial court's determination that the evidence should be excluded as cumulative because there was already evidence in the record showing that Rodriguez was known to carry the actual murder weapon.

■ Appellant also argues that evidence on Rodriguez's volatile temper was relevant because it would show that Rodriguez reacted violently to the argument with Veronica Watt without any prompting from appellant. The evidence supports the trial court's determination that Rodriguez was fearful of the confrontation, that he did not shoot out of anger and did not wish to engage in a physical altercation with Manyani Henderson, and that appellant told Rodriguez several times to "take care of your business." The trial court did not err in excluding evidence regarding Rodriguez's alleged temper.

■ Finally, appellant argues that evidence that a pair of shoes found in the trunk of the green Chevrolet fit Rodriguez and not appellant would prove that Rodriguez alone planned to flee. The trial court excluded the evidence on the basis that it was consistent with the fact that Rodriguez was visiting from out of state. The evidence supports the trial court's determination.

It is not reasonable for us to conclude that the verdict might have been more favorable to the defendant if the evidence had been admitted. Because it was not prejudicial error to exclude the evidence, the trial court did not abuse its discretion.

### III.

■ Determination of whether the prosecutor engaged in prejudicial misconduct is within the trial court's discretion. *State v. Robinson,* 604 N.W.2d 355, 361 (Minn.2000). Reversal is warranted only where the alleged misconduct, examined within the context of the entire record, is so prejudicial that an appellant's right to a fair trial is impaired. *Id.* The trial court's cautionary instructions regarding the alleged misconduct play a significant role in the decision to grant or deny a new trial. *Id.*

■ Appellant argues that the prosecutor committed misconduct during voir dire and during opening and closing arguments by repeatedly inferring that he was privy to the truth and that the truth required convictions. A prosecutor may not express "his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *State v. Salitros,* 499 N.W.2d 815, 817 (Minn.1993) (quotation omitted).

Although the prosecutor commented on "the truth of the evidence," his comments, examined as a whole and within the context of the entire record, are not personal opinions or inferences that he alone was privy to the truth. Finally, the trial court struck from the record the prosecutor's final reference to the truth in his closing argument and later instructed the jury to look solely at the evidence, which did not include counsel's arguments. We conclude that the prosecutor's comments as a whole were not so prejudicial as to warrant a new trial.

■ Appellant also argues that Rodriguez's attorney made comments during his final argument that ridiculed appellant's witnesses, belittled his defense, and attacked his character. The trial court determined that the attorney was properly acting as an advocate and that, even if his closing arguments were improper, the jury instructions would outweigh any prejudice. It does not appear, in the context of the entire argument, that the arguments presented by Rodriguez's attorney prejudiced appellant. The trial court did not abuse its discretion in determining that these comments during closing argument did not deprive appellant of a fair trial.

### IV.

■ Appellant further argues that the cumulative effect of the evidentiary errors and the improper argument from the prosecutor and Rodriguez's counsel require a new trial. Even if an error occurs at trial and that error, standing alone, is insufficient to require reversal, the cumulative effect of all errors may compel reversal. *State v. Underwood,* 281 N.W.2d 337, 344

(Minn.1979). Because the trial court did not err in its evidentiary rulings and because there was no prosecutorial or attorney misconduct, there is no cumulative effect of errors requiring reversal.

## V.

 Finally, appellant argues that the trial court imposed a consecutive sentence that unfairly exaggerated the criminality of his conduct. Appellant concedes, however, that his sentence falls within the presumptive guidelines.

 The trial court has great discretion in imposing sentences. *State v. Munger,* 597 N.W.2d 570, 573 (Minn.App. 1999), *review denied* (Minn. Aug. 25, 1999). This court will reverse a trial court's imposition of a presumptive sentence only in a rare case. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981).

Appellant was sentenced to prison for 480 months for the second-degree murder conviction, to a consecutive term of 153 months for his conviction of one count of attempted murder, and to a concurrent term of 214.5 months for his conviction of the other count of attempted murder. He claims that his sentence is unfair when compared to Rodriguez's sentence, because Rodriguez was the one who did the shooting and appellant played only a minor role. Appellant seeks to have his sentence reduced to 480 months for the second-degree murder conviction with both attempted murder convictions to be served concurrently.

 In cases involving multiple victims, a trial court may impose one sentence per victim "so long as the multiple sentences do not unfairly exaggerate the criminality" of the offense. *State v. Norris* 428 N.W.2d 61, 70 (Minn.1988). In assessing the fairness in sentencing on appeal, this court will compare the defendant's sentence with those of other offenders. *Id.* This court has, however, allowed consecutive sentences to stand in cases that involved three multiple sentences, with two served consecutively. *See id.* at 70–71 (allowing consecutive sentences to stand in cases involving aggravated robbery, assault, and multiple victims).

The trial court determined that the sentence was appropriate, did not unfairly exaggerate appellant's criminality, and was not a deviation from the guidelines. The court noted that appellant's presumptive guideline sentence would have been greater than Rodriguez's because appellant had criminal history points. The court also noted that appellant could have been sentenced consecutively to an aggregate of 786 months under the guidelines, because multiple victims were involved.

The trial court further determined that appellant was actively in control of the situation and that Rodriguez, as a mentally low-functioning adult, was frightened, and looked to appellant for guidance. The court stated that appellant's acts of directing Rodriguez to shoot and of handing a gun to a scared, mentally low-functioning adult "were more reckless than if [appellant] had pulled the trigger himself."

Given these considerations, we cannot conclude that the sentence unfairly exaggerates the criminality of appellant's conduct. Thus, the trial court did not abuse its discretion in sentencing appellant to a concurrent prison term for one of the attempted murder convictions.

## DECISION

The trial court did not abuse its discretion when it ordered a joint trial, disallowed certain evidence, determined that there was no attorney misconduct, and imposed a consecutive sentence.

**Affirmed.**